ROBBINS CHEVROLET COMPANY and Landmark Chevrolet Corporation, Appellants,

v.

MOTOR VEHICLE BOARD and Motor Vehicle Division, Texas Department of Transportation; Austin Chevrolet, Inc., d/b/a Munday/Geo; and Chevrolet Motor Division, General Motors Corporation, Appellees.

No. 03–98–00005–CV.

Court of Appeals of Texas, Austin.

March 25, 1999.

Rehearing Overruled April 22, 1999.

William R. Crocker, Austin, for Appellant Robbins.

J. Bruce Bennett, Baskin, Bennett & Komkov, L.L.P., Austin, for Appellant Landmark.

Howard V. Rose, Brown McCarroll & Oak Hartline,, Austin, for Appellant Austin Chevrolet.

Merritt N. Spencer, Strasburger & Price, L.L.P., Austin, for Appellee Chevrolet Motor Division.

Andrew S. Miller, Assistant Attorney General, Austin, for Appellee Motor Vehicle Board.

Before Justices JONES, B.A. SMITH and YEAKEL.

BEA ANN SMITH, Justice.

Munday, a Chevrolet/Geo dealership on FM 1960 in Houston, filed an application with the Motor Vehicle Board to relocate the dealership less than a mile away from its original site. Robbins, a Chevrolet dealership on Highway 59 in Humble, filed a notice protesting Munday's application to relocate. When the legislature rescinded the right to protest dealership relocations under these circumstances, Munday withdrew its application to relocate and the Motor Vehicle Board dismissed the application without prejudice. Robbins and Landmark, another Chevrolet dealership that joined Robbins's protest, raise three points of error appealing the Board's final order. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee, Munday Chevrolet/Geo ("Munday") is an automobile dealership located on FM 1960 in northwest Houston. In December 1996, Munday filed an application with the Motor Vehicle Board of the Texas Department of Transportation (the "Board") to relocate its dealership to Interstate 45, less than one mile away. Appellant, Robbins Chevrolet Company ("Robbins"), filed a protest pursuant to section 4.06(e) of the Texas Motor Vehicle Commission Code (the "Motor Vehicle Code"). Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 4.06(e), (West Supp.1996, since amended). The administrative law judge ("ALJ") granted Chevrolet Motor Division of General Motors Corporation's ("GM") motion to intervene on behalf of Munday on March 6, 1997, and granted Landmark Chevrolet Corporation's ("Landmark") motion to intervene on behalf of Robbins on March 21.[1]

On May 22, the Texas Senate added a provision to House Bill 1595 amending section 4.06(e) of the Motor Vehicle Code to specify that the relocation of a dealership is not subject to protest by a franchised dealer "if the proposed relocation site is not further than one mile from the site from which the dealership is being relocated." Tex. H.B. 1595, 75th Leg., R.S., ch. 639, § 26 (since codified at Tex.Rev.Civ. Stat. Ann. art. 4413(36), § 4.06(e)(1) (West Supp.1999)). Six days later, Munday withdrew its application. Subsequently, Robbins filed a motion requesting that the ALJ recommend to the Board either a denial of Munday's application to relocate or a dismissal of the application with prejudice.

---

1. We will refer to appellants Robbins and Landmark together as "Robbins," and refer to appellees—Munday, the Motor Vehicle Board, and General Motors—collectively as "Munday."

At a hearing before the ALJ on June 10, Robbins argued for a dismissal of Munday's application with prejudice. The next day, Governor Bush signed H.B. 1595, putting the amended version of section 4.06(e) into effect. Twelve days later, the ALJ filed a proposal for decision with the Board recommending that Munday's application to relocate its dealership be dismissed without prejudice. On August 7, the Board unanimously voted to adopt the proposal and issued a final order dismissing Munday's application without prejudice.

After Robbins appealed the Board's final order, Munday removed the appeal from the district court to this Court pursuant to section 7.01(a) of the Motor Vehicle Code. Tex. Motor Vehicle Commission Code Ann. § 7.01 (West Supp.1999). Robbins sets out three points of error addressing the same issue: whether the Board erred in refusing to dismiss Munday's application with prejudice. Stated in more general terms, the question is whether an agency may dismiss without prejudice a withdrawn license application when the following sequence of events occurs: (1) an opponent files a notice of protest pursuant to statutory authority; (2) the legislature rescinds the statutory right of protest; and (3) the agency then renders a final decision. We will address Robbins's three points of error together.

### DISCUSSION

*Robbins Has No Vested or Substantive Right to Protest Munday's Application*

▮ Munday argues that Robbins has no vested or substantive right to protest its application because the right to protest another entity's licensing process is a procedural right granted by statute. At the time H.B. 1595 went into effect on June 11, the Board had not made a final decision. Because H.B. 1595 rescinded the right to protest before a final decision had been made, Robbins had no vested right. Robbins responds that the Code Construction Act applies and that a savings provision preserves its right to protest because the right had been "previously acquired, accrued, accorded, or incurred" before the adoption of H.B. 1595 removed that right. Tex. Gov't Code Ann.

§ 311.031 (West Supp.1999). We hold, however, that the Code Construction Act does not apply; therefore, the savings provision does not preserve Robbins's right to protest.

The applicability of the Code Construction Act is set forth in section 311.002 of the Government Code. *See* Tex. Gov't Code Ann. § 311.002 (West Supp.1999). The first paragraph of this "scope" provision specifies that the Code Construction Act applies only to "each code enacted by the 60th or subsequent legislature as part of the state's continuing statutory revision program." *Id.* § 311.002(1). Contrary to Robbins's suggestion, the fact that the Motor Vehicle Code is referred to as a "code" does not mean that the Code Construction Act applies to it. *See Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 385 (Tex.1982); *Zapata v. Ford Motor Credit Co.,* 615 S.W.2d 198, 199 (Tex.), *cert. denied,* 454 U.S. 1074, 102 S.Ct. 623, 70 L.Ed.2d 607 (1981). Although the Motor Vehicle Code was enacted in 1971 (subsequent to the 60th legislature), it is not a part of the "continuing statutory revision program."

The "continuing statutory revision program" referred to in section 311.002(1) is the program established under former article 5429b–1 of the Revised Civil Statutes, now itself recodified as section 323.007 of the Government Code. *See* Tex. Gov't Code Ann. §§ 311.002(1), 323.007 (West Supp.1999); *see also PRC Kentron, Inc. v. First City Ctr. Assocs.,* 762 S.W.2d 279, 284 (Tex.App.—Dallas 1988, writ denied). The purpose of this program codifying Texas statutes on a topical basis is to "clarify and simplify the statutes and make [them] more accessible, understandable and usable." Tex. Gov't Code Ann. § 323.007(a) (West Supp.1999). Revisions under this program must be entirely nonsubstantive. *See id.* § 323.007(b). When a statute is recodified pursuant to this statutory revision program, a statement to this effect appears in the introduction to the code. *See id.* ("This code is enacted as part of the state's continuing statutory revision program, begun by the Texas Legislative Council in 1963 as directed by the legislature in the law codified as Chapter 323 of this code."); Tex. Agric. Code Ann. § 1.001

(West 1995); Tex. Local Gov't Code Ann. § 1.001 (West 1988); Tex. Nat. Res.Code Ann. § 1.001 (West 1978); Tex. Parks & Wildlife Code Ann. § 1.001 (West 1991); Tex. Util.Code Ann. § 1.001 (West Supp.1999); Tex. Water Code Ann. § 1.001 (West 1988). Routinely, these recodified codes also include a section expressly applying the Code Construction Act to the entire code. *See* Tex. Gov't Code Ann. § 1.002 (West 1988) ("The Code Construction Act ... applies to the construction of each provision in this code, except as otherwise expressly provided by this code."); Tex. Agric. Code Ann. § 1.002 (West 1995); Tex. Local Gov't Code Ann. § 1.002 (West 1988); Tex. Nat. Res.Code Ann. § 1.002 (West Supp.1999); Tex. Parks & Wildlife Code Ann. § 1.002 (West 1991); Tex. Util.Code Ann. § 1.002 (West Supp. 1998); Tex. Water Code Ann. § 1.002 (West 1988).

Appellants argue that the Code Construction Act applies to *amendments* to any code, even when it does not govern the code itself. For this proposition appellants rely on *Barbee v. State*, 432 S.W.2d 78 (Tex.Crim.App. 1968), *cert. denied*, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241 (1969). In that case, the court of criminal appeals stated that the Code Construction Act applies to amendments to the Code of Criminal Procedure enacted by the 60th or subsequent legislatures; however, in so doing it, it failed to discuss the fact that the Code of Criminal Procedure was not enacted pursuant to the statutory revision program. *See Barbee*, 432 S.W.2d at 82 (op. on reh'g). Appellants urge this Court to follow *Barbee* and apply the Code Construction Act to an amendment to the Motor Vehicle Code, even though the Act is not applicable to the Code itself.

We do not find *Barbee* persuasive or controlling in the present case. Although the supreme court generally yields to the court of criminal appeals' decision in criminal matters, it has held that amendments to civil statutes are not subject to the Code Construction Act. *See Knight*, 627 S.W.2d at 385. Had the legislature intended that the savings clause in the Code Construction Act apply to the Motor Vehicle Code, it could have so specified in the code itself; however, it did

not do so. We cannot do by judicial construction what the legislature has apparently chosen not to do by statutory enactment. *See id.* Furthermore, since the Code Construction Act's applicability was not an issue on appeal in *Barbee*, the court's assumption was dicta and does not bind us in this case.

Robbins also relies on *Harris County District Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 573 (Tex.1991). However, in *J.T.S.* the supreme court simply cited *Barbee* for the narrow proposition that "[t]he Code Construction Act controls when interpreting the Code of Criminal Procedure." *J.T.S.*, 807 S.W.2d at 573. The supreme court generally follows the construction given by the court of criminal appeals to a criminal statute. *See Shrader v. Ritchey*, 158 Tex. 154, 309 S.W.2d 812, 814 (1958). Because the current cause is a civil matter and does not involve the Code of Criminal Procedure, we will follow the supreme court's decision in *Knight* and hold that the Code Construction Act does not apply to an amendment to the Motor Vehicle Code.

■ Robbins also argues that it had a vested right to protest and that the revised section 4.06(e) of the Motor Vehicle Code destroyed this right. To bolster its claim of a vested right, Robbins relies on the case of *State Board of Medical Examiners v. Haney*, 472 S.W.2d 550 (Tex.Civ.App.—Austin 1971, writ ref'd n.r.e.). In *Haney*, the Texas State Board of Medical Examiners revoked Dr. Haney's license to practice medicine. Dr. Haney appealed the Board's order by filing suit in district court. The Board filed a cross-action against Dr. Haney. Upon Dr. Haney's application to register as a licensed physician, the district court enjoined the Board from enforcing its order of cancellation. However, the suit was dismissed for want of prosecution, and neither the Board nor Dr. Haney knew of the dismissal. The Board continued to issue a license to Dr. Haney for two years. When the Board finally learned of the dismissal, it refused to relicense Dr. Haney, who then filed a mandamus action in the court of appeals. *See Haney*, 472 S.W.2d at 551.

After Dr. Haney filed an appeal of the Board's order in district court, a statutory

amendment changed the standard for appealing such administrative orders from *de novo* to substantial evidence review. *See id.* Dismissal of the suit in the district court served to terminate the Board's order of cancellation. The court of appeals held that the amendment changing the standard of review for his appeal deprived Dr. Haney of more than a procedural right: "By perfecting his appeal in the de novo proceeding coupled with the injunction against the enforcement of the cancellation order, Dr. Haney acquired the valuable right to continue the practice of medicine until a contrary determination by the District Court." *Id.* at 552.

*Haney* is distinguishable from the instant case for two reasons. First, in *Haney* both the agency's final decision and the trial court's injunction were in place *before* the amendment changing the standard of review came into effect. By contrast in the present case, H.B. 1595 took effect on June 11, before the Board rendered a final decision. Second, Dr. Haney was contesting the revocation of *his* license to practice medicine; Robbins merely seeks to protest *Munday's* license to relocate its dealership. Given these distinctions, we are not persuaded by *Haney* that under these facts Robbins has anything more than a procedural right. "What the Legislature gives the Legislature can take away." *Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.,* 971 S.W.2d 439, 446 (Tex.1998).

### Munday Had an Absolute Right to Withdraw its Application Absent Any Pending Claim for Affirmative Relief

■ Both parties argue that the withdrawal of an application for a license is analogous to a plaintiff's taking of a nonsuit in a civil action. In her proposal for decision adopted by the Board, the ALJ viewed the license withdrawal as akin to a nonsuit. Assuming

without deciding that the right to take a nonsuit applies in the present circumstances, we hold that Munday had an absolute right to withdraw its application absent any claim for affirmative relief by Robbins or Landmark. *See Hilliard v. Bennett,* 925 S.W.2d 338, 340 (Tex.App.—Corpus Christi 1996) (plaintiff has right to take nonsuit at any time until all evidence other than rebuttal evidence has been introduced), *rev'd on other grounds sub nom. In re Bennett,* 960 S.W.2d 35 (Tex.1997); *Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853, 854–855 (Tex. 1995) (partial summary judgment survives nonsuit); *Aetna Cas. & Sur. Co. v. Specia,* 849 S.W.2d 805, 806 (Tex.1993) (plaintiff's right to nonsuit firmly rooted in state's jurisprudence; Rule 162 liberally construed in favor of right to nonsuit); *BHP Petroleum Co., Inc. v. Millard,* 800 S.W.2d 838, 837–38 (Tex.1990) (plaintiff's right to nonsuit "unqualified and absolute" if defendant has made no claim for affirmative relief); *Greenberg v. Brookshire,* 640 S.W.2d 870, 872 (Tex.1982) (same).

Robbins argues that a good-faith exception to the right to nonsuit applies in this case to prevent Munday's withdrawal. However, the good-faith exception applies only when a nonsuit would destroy the defendant's right to claim affirmative relief.[2] *See Bennett,* 960 S.W.2d at 34. In *Hilliard,* the court of appeals did not discuss the good-faith exception in holding that the trial court could not sanction the plaintiffs' attorneys for filing and then nonsuiting fifteen cases arising from the same occurrence for the express purpose of obtaining a specific court assignment. *See Hilliard,* 925 S.W.2d at 339. While the supreme court reversed the court of appeals' decision in *Hilliard,* it did not question a plaintiff's right to take a nonsuit or the trial court's discretion in dismissing the case.[3] *See Bennett,* 960 S.W.2d at 38.

2. *Black's Law Dictionary* defines "affirmative relief" as: "Relief, benefit, or compensation which may be due and granted to defendant. Relief for which defendant might maintain an action independently of plaintiff's claim and on which he might proceed to recovery, although plaintiff abandoned his cause of action or failed to establish it." *Black's Law Dictionary* 56 (6th ed.1992).

3. The trial court in *Hilliard v. Bennett* sanctioned the plaintiffs' attorneys, finding that they knowingly and intentionally violated Nueces County rules that provide for the random assignment of cases. *See Hilliard v. Bennett,* 925 S.W.2d 338, 340 (Tex.App.—Corpus Christi 1996), *rev'd on other grounds sub nom. In re Bennett,* 960 S.W.2d 35 (Tex.1997). The court of appeals reversed, holding that once the nonsuit was filed, the trial court lost its jurisdiction to issue sanc-

In support of its argument, Robbins cites several cases that discuss a good-faith limitation on the right to take a nonsuit. *See Barton v. Pacific Employers Indem. Co.*, 532 S.W.2d 128, 129 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Ex parte Helle*, 477 S.W.2d 379, 383–84 (Tex.Civ.App.—Corpus Christi 1972, no writ); *State v. Garza*, 358 S.W.2d 749, 750–51 (Tex.Civ.App.—San Antonio 1962, no writ); *J.A. Walsh & Co., Inc. v. R.B. Butler, Inc.*, 260 S.W.2d 889, 890 (Tex.Civ.App.—Waco 1953, writ dism'd w.o.j.). However, the good-faith limitation discussed in *Walsh*, *Barton*, and *Helle* applies only if the nonsuit movant may destroy a defendant's right to affirmative relief. In *Walsh*, the defendant brought a counterclaim against the plaintiff. The court explained the good-faith limitation on non-suits:

> [T]he privilege thus extended to the plaintiff to take a nonsuit is not entirely without limitation. Indeed, the rule expressly provides that the action of a plaintiff in exercising such right shall not thereby prejudice the right of an adverse party to be heard on his claim for affirmative relief and we think the rule implies that a plaintiff, in the exercise of such right, must act in good faith.

*See Walsh*, 260 S.W.2d at 890. The court found that the defendant's counterclaim was the same as a claim for affirmative relief; therefore, the plaintiff's motion to take a nonsuit was limited by defendant's action for affirmative relief. In this case, Robbins did not make a claim for affirmative relief. Its protest was made purely in response to Munday's application and could not independently support a judgment. Because Robbins did not make a claim for affirmative relief, *Walsh*, *Barton* and *Helle* do not support Robbins's argument.

*Garza* was a delinquency proceeding in which the court found the juvenile to be delinquent. The prosecutor appealed the juvenile court's denial of his motion to take a nonsuit. The appellate court found no abuse of discretion, noting "while it is probably the general rule that plaintiff may take a nonsuit, yet where the effect of doing so would operate to destroy the trial court's jurisdiction, the court was justified in refusing to entertain such a motion." *Garza*, 358 S.W.2d at 751. However, the court based its ruling on its determination that the district attorney had taken a nonsuit in order to deprive the juvenile court of jurisdiction. *Id.* No comparable attempt to evade jurisdiction has been made in this case. In addition, although juvenile cases are classified as civil proceedings, they are quasi-criminal in nature. *See In re D.A.S.*, 973 S.W.2d 296, 298 (Tex.1998). We believe that *Garza* is limited to its facts and is not persuasive in the civil matter at issue here.

For the reasons stated above, we overrule Robbins's three points of error.

## CONCLUSION

Robbins's right to protest Munday's relocation application was a procedural right granted by statute. The legislature rescinded the right in cases where the proposed dealership relocation is within a one-mile radius of the original location. Because there was no final agency decision prior to the effective date of the amendment, Robbins had nothing more than a procedural right of protest. Furthermore, the right to protest relocation of another car dealership is fundamentally different from rights a person or entity may have pertaining to their own licensing. Finally, to the extent that the situation in the present case is comparable to a plaintiff's right to take a nonsuit, that right is nearly absolute and is limited only by a defendant's claim for affirmative relief. The Board properly dismissed Robbins's application for relocation without prejudice. We therefore affirm the Board's order.

tions. *See Hilliard*, 925 S.W.2d at 341. The supreme court reversed the court of appeals, holding that a trial court has the discretion to allow a reasonable amount of time for holding a hearing on sanctions and, once the question of sanctions has been resolved, to then sign an order of dismissal. *See Bennett*, 960 S.W.2d at 38.