**AMERICAN HONDA MOTOR CO., INC., Appellant,**

v.

**TEXAS DEPARTMENT OF TRANSPORTATION—MOTOR VEHICLE DIVISION; Motor Vehicle Board; and Dupriest Automotive, Inc., Appellees.**

No. 03–00–00557–CV.

Court of Appeals of Texas, Austin.

March 15, 2001.

Publication Ordered May 17, 2001.

Richard G. Munzinger, Rachel A. Ekery, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, P.C., El Paso, for appellant.

Douglas Fraser, Asst. Atty. Gen., Austin, for Tex. Dept. of Trans.

William E. Walton, Law Offices of Ed Walton, Dallas, for Dupriest.

Before Chief Justice ABOUSSIE, Justices YEAKEL and PATTERSON.

PATTERSON, Justice.

American Honda Motor Co., Inc. appeals from the judgment of the district court affirming a final order of the Texas Motor Vehicle Board (the "Board").[1] Following a complaint filed by Dupriest Automotive Co., Inc. ("Dupriest") with the Board, alleging that Honda had violated section 5.02(b)(8) of the Texas Motor Vehicle Commission Code (the "Code") by not allowing Dupriest to sell its Acura dealership, the Board issued an order denying relief to Dupriest but directing American Honda to pay a civil penalty of $10,000 for violation of the Code.[2] Because the Board lacked jurisdiction over Dupriest's complaint which was filed under the authority of a statute no longer in effect, we reverse the judgment.

---

1. The Texas Motor Vehicle Board was formerly known as the Texas Motor Vehicle Commission. *See* Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 2.01(b) (West Supp.2001).

2. Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 18, 1995 Tex.Gen.Laws 2887, 2897 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended).

## FACTUAL AND PROCEDURAL BACKGROUND

Because the history of this dispute is lengthy and we do not write on a clean slate, we will summarize only the background relevant to this phase of the litigation. This dispute arises out of a franchise relationship between Honda and Dupriest. In 1991, when Dupriest purchased an existing Acura dealership in Amarillo, as a consequence of litigation between the former dealer and Honda,[3] Dupriest also entered into an agreement with Honda that included a provision barring Dupriest from combining its dealership with other lines of automobiles. In 1995, Dupriest proposed to sell its Acura dealership to a Honda dealer who wanted to move the dealership and sell both the Honda and Acura lines of automobiles, thus creating a "dual dealership".at its location. But after Honda refused to allow the prospective purchaser to combine sales of two lines of automobiles at the facility, the prospective purchaser canceled its agreement with Dupriest. Suffering large financial losses, Dupriest ceased selling Acuras in February 1996. Honda terminated Dupriest's franchise in May 1996.

Without first filing a complaint with the Board, in May 1997 Dupriest sued Honda in district court for monetary damages, alleging that Honda's refusal to approve the sale of the dealership to the prospective purchaser violated Code section 5.02(b)(8) in various respects.[4] Honda filed a motion for summary judgment on the grounds, among others, that Dupriest had waived its claim by failing to file a protest with the Board. The trial court granted summary judgment in favor of Honda in August 1997.

On September 19, 1997, Dupriest filed the complaint currently at issue with the Board, alleging that Honda had failed to give effect to or attempted to prevent the sale of the dealership in violation of the Code.[5] Dupriest also appealed the district court's judgment granting summary judgment to Honda. Holding that the Board had exclusive jurisdiction over Dupriest's complaint, the court of appeals reversed the district court's judgment and dismissed the cause for want of jurisdiction. *Dupriest Auto., Inc. v. American Honda Motor Co.*, 980 S.W.2d 521, 524–25 (Tex.App.— Amarillo 1998), *pet. denied per curiam*, 10 S.W.3d 673 (Tex.2000). In a *per curiam* opinion, the supreme court denied Honda's petition for review, observing that neither party "contended that under the doctrine of primary jurisdiction, proceedings in the trial court should be abated pending consideration of issues by the [Board]." *American Honda Motor Co. v. Dupriest Auto., Inc.*, 10 S.W.3d 673, 673 (Tex.2000).

Meanwhile, the Board proceeded to a hearing on the merits of whether Honda violated section 5.02(b)(8)[6] by refusing to agree to Dupriest's sale of his dealership to the prospective purchaser. After a two-day hearing, the administrative law judge ("ALJ") found that Honda had violated the Code but denied relief to Dupriest. The

---

3. Honda is licensed as a distributor of new motor vehicles as defined in section 1.03(11) of the Code. Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 1.03(11) (West Supp.2001).

4. Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 18, 1995 Tex.Gen.Laws 2887, 2897 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended).

5. Dupriest also alleged a violation of Code section 5.02(b)(16) because Honda failed to repurchase inventory. Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(16) (West Supp.2001). This issue is not before us.

6. Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 18, 1995 Tex.Gen.Laws 2887, 2897 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended).

ALJ concluded that Dupriest did not waive its right to bring a complaint before the Board by first bringing the action in district court and that the Code allowed only the aggrieved selling dealer—and not the distributor—the right to file a protest before the Board. The ALJ also concluded that the Board had the authority to issue a civil penalty because section 6.01(a) of the Code allowed the Board to assess a civil penalty "after a proceeding conducted in accordance with this Act ... that any person ... has violated any provision of this Act." Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 6.01(a) (West Supp.2001). Thus, once the dealer filed a complaint and notice of hearing, the ALJ found that no further notice was required to invoke the Board's jurisdiction. Finding that "the question of a manufacturer's alleged violation of such a Code provision goes to the very heart of the purpose of the TMVC Code [section] 3.01(a) for the Board to regulate all aspects of the distribution, sale, and leasing of motor vehicles," the ALJ further concluded that the Board had authority to issue a civil penalty. In the alternative, however, the ALJ recommended that the matter be referred to the Enforcement Section of the Motor Vehicle Division of the Texas Department of Transportation.

The Board adopted the ALJ's proposal for decision, finding that Honda had failed to give effect to and attempted to prevent the sale of Dupriest's dealership without showing that the sale and transfer would be detrimental to the public or the representation of the manufacturer or distributor, thereby violating section 5.02(b)(8). The Board denied relief to Dupriest but entered its order assessing civil penalties against Honda. Adopting the findings of fact, conclusions of law, and recommenda-

tions contained in the proposal for decision, the Board assessed a penalty of $10,000 against Honda under section 6.01 of the Code. *Id.*

Honda brought this action for judicial review in the district court of Travis County. The district court upheld the Board's order, and Honda appeals the district court's judgment. Honda raises seven issues on appeal, contending first that the Board lacked jurisdiction because the statute under which Dupriest complained had been repealed. Alternatively, Honda argues that the Board exceeded the scope of its authority because it lacked jurisdiction once the prospective purchaser backed out of its agreement with Dupriest, cancelling the pending sale. In its other issues, Honda asserts that the Board's order is erroneous in various respects. Because we find that the Board lacked jurisdiction, we reverse the judgment on that ground.

## THE CONTROVERSY

### The Statute

From 1989 until June 11, 1997, section 5.02(b)(8) of the Code provided that it was unlawful for an automobile manufacturer or distributor to:

> Notwithstanding the terms of any franchise agreement, fail to give effect to or attempt to prevent any sale or transfer of a dealer, dealership or franchise or interest therein or management thereof unless, after complaint or protest, it is demonstrated to the Commission after hearing that the result of any such sale or transfer will be detrimental to the public or the representation of the manufacturer or distributor.[7]

---

7. Act of May 18, 1989, 71st Leg., R.S., ch. 1130, § 24, 1989 Tex.Gen.Laws 4653, 4667 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(6), since amended); Act of May 25, 1991, 72d Leg., R.S., ch. 501, § 19, 1991 Tex.Gen.Laws 1749, 1757 (Tex.Rev.Civ.Stat. Ann. art. 4413(36), § 5.02(b)(8), since amended); Act of Apr. 19, 1993, 73d Leg., R.S., ch.

Thus, a dealer whose proposal to sell or transfer its dealership had been disallowed by a distributor could bring a complaint to the Board. At a hearing before the Board, the distributor was required to establish that the proposed sale or transfer was either detrimental to the public *or* detrimental to the representation of the distributor.

In 1997, Texas House Bill 1595 replaced the Texas Motor Vehicle Commission with the Board [8] and provided additional regulations regarding motor vehicle dealers, manufacturers and distributors.[9] Effective June 11, 1997, section 5.02(b)(8) was amended [10] to permit transfers of dealerships unless the distributor first establishes that the proposed transferee is "unqualified" as defined in the statute. *See* Tex.Rev.Civ.Stat .Ann. art. 4413(36), § 5.01B(a) (West Supp.2001). Under the amended statute, for example, it is unreasonable for a distributor to reject an applicant of good moral character who meets the distributor's written, reasonable, and uniformly applied standards of business experience and financial qualifications. *Id.*

§ 5.01B(c). The section also included a new procedural method for bringing to the Board a distributor's refusal to allow a dealer to transfer ownership.[11] The parties agree that the amendment reflects a legislative intent to more freely allow the sale and transfer of dealerships in Texas by narrowing the scope of the grounds for disallowance.

In the bill's saving clause, the legislature provided that the amendment would "take effect and be enforced from and after its passage" [12] and, further, that the following actions would remain subject to the former version of section 5.02(b)(8):

> An action commenced before the effective date of this Act and in which the trial or any new trial or retrial is in progress on the effective date of this Act is governed by the law applicable to the action immediately before the effective date of this Act, and that law is continued in effect for that purpose.[13]

The bill contained an emergency clause, making it effective upon passage.[14]

61, § 7, 1993 Tex.Gen.Laws 136, 141 (Tex. Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended); Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 18, 1995 Tex.Gen.Laws 2887, 2897 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended); Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 30, 1997 Tex.Gen.Laws 2185, 2201 (Tex. Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended).

8. Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 2, 1997 Tex.Gen.Laws 2185, 2188.

9. *Id.* § 29, at 2198–99.

10. *Id.* § 30, at 2201 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended).

11. The amended provision requires that a dealer notify a distributor by certified mail, return receipt requested, of its intent to transfer a dealership. Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.01B(a) (West Supp.2001). The

notice must be in writing and must include the prospective transferee's identity, financial qualifications, and business experience, copies of pertinent agreements regarding the proposed transfer, completed application forms and related information generally utilized by the distributor and on file with the Board, and the prospective transferee's written agreement to comply with the terms of the franchise agreement. *Id.* The distributor then has sixty days to send, by certified mail, its response to the dealer. *Id.* § 5.01B(b). These requirements were not contained in the pre-amendment version. Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 29, 1997 Tex.Gen.Laws 2185, 2198–99.

12. Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 40, 1997 Tex.Gen.Laws 2185, 2208.

13. *Id.* § 39, at 2207.

14. *Id.* § 40, at 2208.

### The Issue

Before Dupriest filed its complaint with the Board, then, a statutory amendment changed the triggering mechanism for bringing a complaint to the Board as well as the standard for challenging such transfers. On September 19, 1997, Dupriest filed its complaint with the Board, complaining of Honda's violation of former section 5.02(b)(8) of the Code.[15] Because Dupriest filed its complaint with the Board after the statute was amended, the question presented is whether Dupriest's complaint falls within the saving clause of the amended statute, thus invoking the Board's jurisdiction. The Board argues that because (i) the amended version of the bill did not repeal a dealer's right to file a complaint against a distributor and (ii) the dispute concerns events occurring in 1995 during the pendency of the former version of the statute, it has the authority to impose a civil penalty under that statute.

### DISCUSSION

The purpose of the Code is "to insure a sound system of distributing and selling motor vehicles through licensing and regulating manufacturers, distributors, converters, and dealers of those vehicles ... in order ... to prevent frauds, unfair practices, discriminations, impositions, and other abuses" that threaten "the general economy of the State and the public interest and welfare of its citizens." Tex.Rev. Civ.Stat.Ann. art. 4413(36), § 1.02 (West 1976 & Supp.2001). The Code creates the Board, *id.* § 2.01(a) (West Supp.2001), and confers upon it "the general and original power and jurisdiction to regulate all aspects of the distribution, sale and leasing of motor vehicles." *Id.* § 3.01(a). The Board is charged with conducting the policy-making and regulatory functions and duties imposed by the Code. *Id.* The Board thus regulates the contractual relationship between new vehicle manufacturers and distributors and dealers who sell and service the new vehicles pursuant to the terms of franchise[16] agreements. *Id.* § 5.02. The Code provides that "[u]nless otherwise specifically provided by Texas law not in conflict with the terms of this Act, all aspects of the distribution and sale of motor vehicles shall be governed exclusively by the provisions of this Act." *Id.* § 3.01(b). The Code also sets out procedures to be followed when a dealer wishes to sell or transfer a dealership. *Id.* § 5.01B.

In addition, the Code contains mechanisms for enforcing these provisions. Under the pre-amendment version of the Code, it was unlawful for a manufacturer or distributor to fail to give effect to a sale or transfer of a dealer "unless, *after complaint or protest,* it is demonstrated to the Commission *after hearing* that the result of any such sale or transfer will be detrimental to the public or representation of the manufacturer or distributor."[17] The amended version provides for a "dealer" whose application to transfer is rejected to file a protest with the Board. *Id.* § 5.01B(d). Under either version of the statute, if the Board has reason to believe, "through receipt of a complaint or otherwise," that a violation of the Code has

---

15. Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 18, 1995 Tex.Gen.Laws 2887, 2897 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended).

16. The Code expressly defines the term "franchise." Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 1.03(14) (West Supp.2001).

17. Act of May 19, 1995, 74th Leg., R.S., ch. 357, § 18, 1995 Tex.Gen.Laws 2887, 2897 (Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 5.02(b)(8), since amended) (emphasis added).

occurred, the Board is authorized to conduct an investigation. *Id.* § 3.05(a). If the Board determines that a person is violating the Code, the Board can levy a civil penalty, issue a cease and desist order, or institute a suit to enjoin the violation. *Id.* §§ 6.01, 6.01A, 6.02.

Honda complains that Dupriest's right to file a complaint with the Board under the pre-amendment version of section 5.02(b)(8) expired when the provision was amended. Dupriest argues that, because it had filed a lawsuit in district court and there was "live litigation ongoing" before the legislature amended the statute, its complaint falls within the saving clause of the amended statute. In any event, Dupriest argues, Honda failed to complain that the pre-amendment statute did not apply to the proceedings below and is therefore barred from raising it pursuant to the doctrine of invited error.[18]

Recognizing the narrow language of the saving clause in the statutory amendment, the Board asserts that a *specific* saving clause does not necessarily reflect a legislative intent to exclude actions not covered by the clause. The Board also argues that the amended statute did not revoke a dealer's right to file a complaint against a distributor, but that it merely narrowed the defenses available to a distributor to justify its rejection of a proposed transfer. It necessarily follows, the Board argues, that the pre-amendment version of the statute applies.

■■■ A legislature may enact a general saving statute that will preserve rights and remedies except where a repealing act indicates a contrary legislative intent. 2A Norman J. Singer, *Sutherland Statutory Construction* § 47:13 (6th ed.2000). When a cause of action is based on a statute, the repeal of that statute without a saving clause for pending suits is given immediate effect. *Quick v. City of Austin,* 7 S.W.3d 109, 128 (Tex.1998); *Knight v. International Harvester Credit Corp.,* 627 S.W.2d 382, 384 (Tex.1982). "The general rule is that when such law is repealed without a saving clause, it is considered, except as to transactions past and closed, as though it had never existed." *National Carloading Corp. v. Phoenix–El Paso Express, Inc.,* 142 Tex. 141, 176 S.W.2d 564, 570 (1943). The repeal of the statute thus deprives a court of subject matter jurisdiction over the cause. *Id.*[19] Likewise, the amendment of an act indicates that the legislature intended to change the original act by creating a new right or withdrawing an old one. 1A Singer, *supra* § 22.30 (5th ed.1993).

■■■ Courts are generally agreed that rights of action based upon purely statutory grounds may be abolished by the legislature even after they have accrued. *Ewell v. Daggs,* 108 U.S. 143, 150–51, 2 S.Ct. 408, 27 L.Ed. 682 (1883); *National Carloading Corp.,* 176 S.W.2d at 569; *Robbins Chevrolet Co. v. Motor Vehicle Bd.,* 989 S.W.2d 865, 869 (Tex.App.—Austin 1999, pet. denied). As the Texas Supreme Court recognized, in the absence of a saving clause, amendment or repeal of a stat-

---

**18.** The parties agree that the amended version of section 5.02(b)(8) does not apply to this proceeding. Neither party complied with the revised notice and procedural standards of the amended statute. In its *per curiam* opinion denying Honda's petition for review, the supreme court agreed that Dupriest's claim before the district court was "not controlled by the amendments." *American Honda Motor Co. v. Dupriest Auto., Inc.,* 10 S.W.3d 673, 673 n. 2 (Tex.2000).

**19.** Subject matter jurisdiction is essential to the Board's authority and may be raised at any time. *Cf. Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 445 (Tex.1993).

ute abrogates all causes of action based upon the old law:

> If, before rights become vested in particular individuals, the convenience of the State induces amendment or repeal of the laws upon which they are based, these individuals are left without any remedy at law to enforce their claims; and if final relief has not been granted before the repeal goes into effect it cannot be granted thereafter, even if a judgment has been entered and the cause is pending upon appeal.

*National Carloading Corp.,* 176 S.W.2d at 570.

 The inclusion of a saving clause, then, operates to preserve certain rights, remedies, or privileges that the general enactment would otherwise destroy. 1A Singer, *supra* § 20.22. Because House Bill 1595 contains a specific saving clause of its own, allowing for preservation of rights under the amended statute in certain circumstances, we first look to the actual language of the clause to determine its application and scope.[20] *See Quick,* 7 S.W.3d at 129. Applying familiar tenets of statutory construction, we must give effect to each sentence, clause, phrase and word if reasonably possible in interpreting a statute, because every word in a statute is presumed to have been used for a purpose. *See Eddins–Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 95 (1957). It is an equally well-established rule of construction that when a statute amends another with a saving clause that the saving clause will not be held to embrace anything which is not fairly within its terms. 1A Singer, *supra* § 22.30, at 267.

 The language of the saving clause is unequivocal. The pre-amendment version of the statute applies only to "an action commenced before the effective date of this Act and in which the trial or any new trial or retrial is in progress on the effective date of this Act." Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 39, 1997 Tex.Gen.Laws 2185, 2207. That the provision at issue appears to limit the clause to some stage of ongoing *trial* proceeding underscores its apparent narrowness. The parties agree that Dupriest's claim was not part of a "trial or any new trial or retrial ... in progress." *Id.*

That the very specific saving clause will eliminate certain designated expectations and liabilities under the amended statute is also clear. We need not reach the issue of the breadth of the saving clause, however, because, as of June 11, 1997, this cause was not *pending.* At the time House Bill 1595 went into effect, Dupriest had not yet filed a complaint with the Board. Because House Bill 1595 rescinded the right to complain except for actions falling within the saving clause, the Board did not have jurisdiction over Dupriest's complaint.

 Whatever the scope of this *sui generis* provision, we may presume that the legislature intended the plain meaning of its words,[21] which requires "an action commenced before the effective date" of the amendment, that is, a *pending* action. Act of May 22, 1997, 75th Leg., R.S., ch. 639, § 39, 1997 Tex.Gen.Laws 2185, 2207. As of June 11, 1997, then, while the damage suit was pending in district court, this cause had not yet been filed with the

---

**20.** The Board does not argue that any other saving clause applies, and this Court has specifically rejected the application of the general saving clause in the Code Construction Act to the Texas Motor Vehicle Code. *Robbins Chevrolet Co. v. Motor Vehicle Bd.,* 989 S.W.2d 865, 868 (Tex.App.—Austin 1999, pet. denied).

**21.** *See In re Bay Area Citizens Against Lawsuit Abuse,* 982 S.W.2d 371, 380 (Tex.1998).

Board. Neither Dupriest nor the Board cite any authority for the proposition that a separate cause of action between parties to a dispute before the Board may be construed to be the same action. In its *per curiam* opinion denying Honda's petition for review, the supreme court noted that neither Dupriest nor Honda had sought the abatement of the district court proceedings pending resolution of issues properly before the Board. *American Honda Motor Co.*, 10 S.W.3d at 673.

Because the district court action is a separate cause, which was not abated but rather was dismissed, we conclude that this cause is not preserved by the saving clause. Thus, any right that Dupriest had to file a complaint and any power of the Board to adjudicate the issue under section 5.02(b)(8) was extinguished when the legislature amended the Code in June 1997. Dupriest's protest, filed three months after the amendment took effect, does not fit within the saving provision and cannot be governed by the old statute.

In support of its argument that Dupriest is not entitled to file a complaint under the pre-amendment version of the statute, Honda relies on our decision in *Robbins Chevrolet*, which was decided after the Board's hearing in this case. 989 S.W.2d at 865. In that case, Munday, a dealership in Houston, filed an application with the Board to relocate its dealership. *Id.* at 866. Robbins, a neighboring dealer, filed a notice protesting the relocation application pursuant to the Code provision permitting the protest. *Id.* The legislature then amended the standard governing the protest of dealership relocations. As a result, Munday withdrew its application to relocate and the Board dismissed the application. *Id.* This Court affirmed the dismissal, noting that Robbins had no vested right to protest Munday's application because, at the time the legislature amended the stat-

ute, the Board had not yet made a final decision. *Id.* at 870. Because the amendment rescinded the right to protest before a final decision had been made, Robbins had no vested right impaired by the statutory amendment. *Id.* The legislative enactment that rescinded the right to protest in *Robbins Chevrolet* was the same bill that amended section 5.02(b)(8). *Id.* at 866 (referencing House Bill 1595, Act of May 22, 1997, 75th Leg., R.S., ch. 639, 1997 Tex.Gen.Laws 2185).

The Board contends that *Robbins Chevrolet* does not control because it applies only to those Code amendments that revoke the right to protest, not those that change the standards governing protests. The Board argues that, because section 5.01(b)(8), as amended, merely changed a manufacturer's defenses in a protest proceeding but did not affect the right to protest, *Robbins Chevrolet* should not apply. We disagree.

Contrary to the Board's assertion, the Code amendments in *Robbins Chevrolet* did not completely revoke the right to protest relocation of dealerships but merely changed the standard under which dealers could do so. *Id.* We observed, "The legislature rescinded the right to protest dealership relocations under the circumstances" presented. *Id.* We further concluded that Robbins did not have a vested right to protest because House Bill 1595 took effect prior to the time the Board rendered a final decision. *Id.* at 870. We concluded that Robbins's right to a protest disappeared once the amendments took effect. *Id.*

Here, at the time the statute took effect, Dupriest had yet to file its complaint with the Board. Because the Code amendments took effect immediately, and because Dupriest's protest is not preserved by the saving clause, as in *Robbins Chevrolet*, Dupriest's right to protest under the

former version of the statute was extinguished.

Although the Board acknowledges that this case was filed as a complaint by Dupriest, the Board maintains that, because it received a complaint that Honda had violated the Code, the Board may investigate and, upon finding a violation of the former statute, impose sanctions. Because the Board's authority is predicated upon Dupriest's complaint, under the facts of this case, we are persuaded that the Board was without authority to impose a civil penalty.

Administrative agencies are created by statute and have no inherent authority. *Public Util. Comm'n v. GTE–Southwest, Inc.*, 901 S.W.2d 401, 406 (Tex. 1995); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex.App.—Austin 1986, writ ref'd n.r.e.). Therefore, agencies may only exercise those specific powers that the law confers in clear and express language. *See Kawasaki Motors Corp. v. Texas Motor Vehicle Comm'n*, 855 S.W.2d 792, 797 (Tex.App.—Austin 1993, no writ). An agency may also exercise powers necessarily implied from the statutory authority granted or the duties expressly given or imposed. *See Sexton*, 720 S.W.2d at 137. However, the agency may not, on a theory of necessary implication from a specific power, function, or duty expressly delegated, erect and exercise a new or additional power or a power that contradicts the statute. *Id.* at 137–38. Nor may the agency exercise a new power solely for administrative purposes of expediency. *Id.* at 138.

Certainly, the Board has broad power to regulate all aspects of the distribution and sale of motor vehicles. Tex.Rev.Civ.Stat. Ann. art. 4413(36), § 3.01(a). The Board may receive complaints and conduct investigations to determine if violations of the Code have occurred. *Id.* § 3.05(a). The

Board's investigatory and enforcement authority, however, is drawn from Code section 3.05(a), which provides as follows:

> Whenever the Board has reason to believe, through receipt of a *complaint or otherwise,* that a violation of this Act or a Board rule, order, or decision has occurred or is likely to occur, *the Board shall conduct an investigation* unless it determines that a complaint is frivolous or for the purpose of harassment. If the Board's investigation establishes that a violation of this Act or a Board rule, order, or decision has occurred or is likely to occur, the Board shall institute proceedings as it deems appropriate to enforce this Act or its rules, orders, and decisions.

*Id.* (emphasis added).

While the Board may act on something other than a complaint, we conclude that when the Board's jurisdiction is predicated entirely on a claim presented by a private party, that party must be able to properly invoke the Board's jurisdiction. The language of the statute itself specifies that the complaint not be "frivolous or for the purpose of harassment." *Id.* The provision necessarily contemplates that the complaint be within the Board's jurisdiction and sufficient to trigger an investigation and the institution of proceedings. *Id.* We need not reach the question whether the Board had the authority to investigate and assess penalties under the former version of the statute because the Board only acquired jurisdiction—if any—by virtue of Dupriest's complaint. As this Court noted in *Robbins Chevrolet,* the right to protest under the circumstances presented in that case was merely a procedural right that disappeared when the legislature amended the statutory standard governing protests. 989 S.W.2d at 869. Thus, unless Dupriest's complaint was preserved by the

terms of the saving clause, the Board did not acquire jurisdiction.

The ALJ recognized that "the complaint and notice of hearing filed in this matter does not specifically notice the potential assessment of a civil penalty." The ALJ determined, however, that notice was not required because a "proceeding has been conducted in accordance with the Act" and an unlawful act was found. Recognizing the statute's authority to refer the matter for investigation and enforcement action, the ALJ concluded, as an alternative recommendation, that the matter be referred to the Division's Enforcement Section.

■ The Board contends that its enforcement powers permit it to impose civil penalties against Honda regardless of the viability of Dupriest's complaint. Under the circumstances of this case in which the Board invoked its jurisdiction solely on the basis of Dupriest's complaint, we are compelled to conclude otherwise. In *Foree v. Crown Central Petroleum Corp.*, the Texas Supreme Court addressed an analogous issue in a dispute involving the Railroad Commission. 431 S.W.2d 312 (Tex.1968). The court recognized, as an exception to the doctrine of primary jurisdiction, the circumstance in which an agency is powerless to grant the relief sought and is without authority to make incidental findings essential to the granting of relief. *Id.* at 316–17. After observing that the Railroad Commission had broad statutory powers to "hold hearings, make findings, promulgate rules and regulations and enter orders to prevent or to terminate discriminatory practices by common carriers and common purchasers of oil and gas," the court concluded:

> In none of the statutes, however, do we find authority for the Commission to

hold hearings and make findings of discrimination except as incidental to the power to take official action, i.e., to promulgate rules and regulations or to enter and issue orders. In other words, no authority is conferred upon the Commission to make findings of discrimination in a vacuum or as a mere agent of a trial court. It follows, therefore, that the Commission does not have authority, and cannot have exclusive primary jurisdiction, to make findings of discrimination in a particular case when the alleged discrimination no longer exists and official action by the Commission is thereby mooted.

*Id.*

Although Honda relies on *Foree* primarily to argue that the Board action is mooted by the hypothetical nature of the dispute, we conclude that, because the Board was without jurisdiction over Dupriest's complaint, any order predicated upon a proceeding on that complaint would not be incidental to official action within the Board's competence. The Board seeks to distinguish *Foree* because here the Board has the authority to make findings essential to the granting of relief sought and, further, the Board may investigate and assess civil penalties. The Board's authority to assess civil penalties, however, is limited to proceedings "conducted in accordance with this Act," which necessarily contemplates a proper invocation of jurisdiction. Tex.Rev.Civ.Stat.Ann. art. 4413(36), § 6.01(a).

■ We need not reach the issue whether the Board could have also instituted proceedings independent of Dupriest's complaint, because those facts are not before us.[22] The ALJ specifically found that the Board did not give notice of its investi-

---

22. We recognize that pleading requirements may be less precise in administrative proceedings than in practice before courts. *Suburban*

*Util. Corp. v. Public Util. Comm'n*, 652 S.W.2d 358, 365 (Tex.1983).

gation or intent to impose civil penalties and that the matter had not been referred to the enforcement authorities. Because the Board's jurisdiction is predicated on Dupriest's complaint, which was filed pursuant to the pre-amendment version of section 5.02(b)(8), the Board was without jurisdiction to hold a hearing on that complaint. Therefore, we sustain Honda's first issue.

Having reversed the district court's judgment for lack of jurisdiction, we do not reach Honda's remaining issues.

## CONCLUSION

Dupriest's right to file a complaint or protest with the Board concerning Honda's violation of section 5.01(b)(8) was a statutory right, which was rescinded in June 1997 except for those cases falling within the saving clause. Because Dupriest's complaint did not fall within the saving clause, we hold that the Board did not have jurisdiction over the complaint and that proceedings conducted pursuant to the complaint were not in accordance with the Code. The Board improperly imposed civil sanctions based on its adjudication of a complaint filed under a statute no longer in effect. We therefore reverse the district court's judgment and render judgment that the proceedings be remanded to the Board for further proceedings consistent with this opinion.