# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-17-00355-CV

**James Maroney and Maureen Maroney, Appellants**

**v.**

**Chip Buerger Custom Homes, Inc. and Newton W. Buerger, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-GN-16-000642, HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated March 22, 2018 and substitute the following opinion and judgment in their place, and we overrule Newton W. Buerger's motion for rehearing.

Appellants James and Maureen Maroney, subsequent purchasers of a home built by Chip Buerger Custom Homes, Inc. (Buerger Homes), appeal the trial court's summary judgment in favor of the builder and its president and sole shareholder, Newton W. Buerger (collectively, appellees), dismissing their claims alleging defective and negligent construction of the home and breach of implied and express warranties. We reverse the portion of the trial court's summary judgment dismissing the Maroneys' implied-warranty claim against Buerger Homes with respect

to the claimed damages to the two-story lakeside porch and remand that cause for further proceedings. We also reverse the portion of the judgment awarding appellees attorney's fees and render judgment that neither appellee is entitled to attorney's fees. We affirm the remainder of the trial court's judgment.

**BACKGROUND**

The record shows that the Maroneys purchased the home at issue in January 2011 from a third-party relocation company, which had purchased the home from its original owners, for whom Buerger Homes built the home pursuant to a "Residential Construction Contract" (the Contract). Buerger Homes completed construction of the home in June 2009. Prior to the Maroneys' purchase, they received from the seller's realtor a copy of an engineering report on the property (the 2011 report) prepared for the seller by an independent engineering company.[1] The Maroneys did not move fully into the home until mid-2012 but outfitted it with basic furniture and stayed overnight there at least once a month after purchasing it in early 2011.

In February 2016, the Maroneys filed this lawsuit against appellees to recover the costs of various repairs they made to the home that were allegedly necessitated by defective construction. Their pleadings alleged that in March 2015 they discovered water damage and waterproofing issues with the home, causing structural damage and necessitating repairs. They asserted claims in negligence and breach of express and implied warranties as well as pleading that their claims were not barred by the respective two- and four-year statutes of limitations due to the

---

[1] It is not clear from the record whether the Maroneys hired an inspector, engineer, or other expert of their own to evaluate the property prior to purchasing the home.

2

discovery rule. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (stating limitations periods); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 (Tex. 1988) ("A party seeking to avail itself of the discovery rule must therefore plead the rule, either in its original petition or in an amended or supplemental petition in response to defendant's assertion of the defense as a matter in avoidance."). Through the course of discovery, the Maroneys identified four defects for which they sought damages: (1) inadequate waterproofing and resulting structural damage of the home's two-story "lakeside porch"; (2) defective installation of two columns outside the living-room window, resulting in wood rot of the columns; (3) improper sealing of the home's "envelope," causing or contributing to water damage and bug infestation; and (4) improper grading and drainage around the home's exterior, causing water penetration into the home.

In their answer, appellees raised several affirmative defenses, including statutes of limitations and the Maroneys' lack of capacity to sue due to non-privity, and filed a counterclaim for attorney's fees under a prevailing-party clause in the Contract. After sufficient time for discovery had elapsed, appellees filed a motion for partial summary judgment on all of the Maroneys' claims, raising the following grounds in support: limitations, lack of the Maroneys' capacity to sue, the "economic loss rule," and lack of a material fact issue with respect to the Maroneys' landscaping and grading claims. Appellees supported their motion with, among other evidence, excerpts from the deposition of James Maroney and the 2011 report.

The trial court granted the motion, leaving only appellees' counterclaim for attorney's fees pending. Both parties then filed partial summary-judgment motions with respect to appellees' counterclaim. The trial court granted appellees' motion and denied appellants' and later conducted an evidentiary hearing on the amount of attorney's fees to be awarded. After that hearing, the trial

3

court rendered a final judgment incorporating the two interlocutory partial-summary judgments and awarding appellees $54,000 in attorney's fees plus further contingent amounts in the event of unsuccessful appeals by the Maroneys.

## DISCUSSION

The Maroneys contend on appeal that the trial court erred in (1) granting summary judgment dismissing all of their claims because the evidence they presented raised genuine issues of material fact on appellees' limitations affirmative defense and because appellees were not entitled to summary judgment as a matter of law on their negligence and warranty claims, and (2) awarding appellees attorney's fees because the Maroneys were not signatories to the Contract. We review a trial court's grant of summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When, as here, a trial court grants summary judgment but does not specify the grounds for granting the motion, we must uphold the judgment if any of the grounds asserted in the motion and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). In reviewing a trial court's ruling on summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve all doubts in the nonmovant's favor. *Id.* Generally, we review the decision by a trial court to either grant or deny attorney's fees for abuse of discretion. *See EMC Mortg. Corp. v. Davis*, 167 S.W.3d 406, 418 (Tex. App.—Austin 2005, pet. denied).

### *Limitations and discovery rule*

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *KPMG Peat Marwick v. Harrison Cty. Hous.*

*Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of its injury. *Id.* If the movant establishes that the statute of limitations bars the action, the nonmovant must then adduce summary-judgment proof raising a fact issue in avoidance of the statute of limitations. *Id.*

The discovery rule is a limited exception to the statute of limitations. *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). The rule is applied when the nature of the injury is inherently undiscoverable, that is, when it is "difficult for the injured party to learn of the negligent act or omission." *Id.* at 456 (quoting *Willis v. Maverick*, 760 S.W.2d 642, 645 (Tex. 1988)). "Inherently undiscoverable encompasses the requirement that the existence of the injury is not ordinarily discoverable, even though due diligence has been used." *Id.* Whether an injury is inherently undiscoverable is a legal question "decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). The discovery rule operates to defer the accrual of a cause of action until the date the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action. *Computer Assocs.*, 918 S.W.2d at 455; *see J.M. Krupar Constr. Co. v. Rosenberg*, 95 S.W.3d 322, 329 (Tex. App.—Houston [1st Dist.] 2002, no pet.). A plaintiff need not know the full extent of the injury before limitations begin to run. *See Town of Dish v. Atmos Energy Corp.*, 519 S.W.3d 605, 613 (Tex. 2017) (holding

5

that evidence showed plaintiffs were concerned about air contamination and were at least put on "inquiry notice" of claims well before date of report on which they relied as accrual date); *Gonzales v. Southwest Olshan Found. Repair Co.*, 400 S.W.3d 52, 58 (Tex. 2013) (recognizing that "once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it"); *see also Murphy v. Campbell*, 964 S.W.2d 265, 273 (Tex. 1997).

Generally, in construction-defect cases, limitations begin to run when an owner becomes aware of property damage. *J.M. Krupar Constr.*, 95 S.W.3d at 329. However, the question of when a plaintiff knew or should have known of an injury generally is a question of fact. *Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 570 (Tex. App.—Austin 2003, no pet.). "Discovery" occurs when a plaintiff has knowledge of such facts, conditions, or circumstances as would cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action or injury. *Trousdale v. Henry*, 261 S.W.3d 221, 234 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). The discovery rule requires reasonable diligence by the plaintiff to make inquiry about his or her legal rights upon discovery of such facts, conditions, or circumstances. *See Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 754 (Tex. App.—Amarillo 1995, writ denied).

The parties agree that the Maroneys' negligence and warranty claims are governed by two- and four-year limitations periods, respectively. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a) (stating limitations periods). Because the Maroneys filed this suit on February 11, 2016, any negligence and warranty claims that accrued prior to February 11, 2014 and 2012, respectively, are time-barred. Appellees asserted in their summary-judgment motion that the Maroneys discovered,

or should have discovered, their claimed property damage in January 2011 when they bought the home and reviewed the 2011 report. *See J.M. Krupar Constr.*, 95 S.W.3d at 329–330; *Bayou Bend Towers Council of Co-Owners v. Manhattan Constr. Co.*, 866 S.W.2d 740, 742–43 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (noting that discovery rule tolls accrual until plaintiff discovers, or should have discovered through exercise of reasonable diligence and care, nature of injury).

We separately consider each of the Maroneys' claimed home defects and whether appellees were entitled to summary judgment by proving that there is no genuine issue of material fact about when the Maroneys discovered, or in the exercise of reasonable diligence should have discovered, the nature of their injury. *KPMG*, 988 S.W.2d at 748.

### Claims related to two-story lakeside porch

In their summary-judgment motion, appellees contended that the Maroneys knew or should have known—due to the 2011 report—about the alleged defects relating to the two-story lakeside porch more than four years before they filed suit and that, therefore, their claims related to that defect are barred by limitations. Appellees cited the following statements in the report, along with corresponding photographs: "There is mortar cracking at the stone arches at the northeast corner. . . . The stone arches exhibit no steel lintels to provide support for the veneer above. The resultant mortar cracking, as noted above, is considered as the result of an over-spanned condition. Repairs are indicated to adequately support the veneer above the arches."

The Maroneys respond that the damage related to the lakeside porch alleged in their lawsuit is not the "cracked mortar" and associated lintel and stone-veneer repairs ("cosmetic

7

issues")—of which they acknowledge they knew about from the 2011 report—but, rather, "structural damage to the framing members (the studs holding up the structure, the girders and floor joists supporting the floor, and the rafters and ceiling joists holding up the roof) . . . due to water penetration and inadequate waterproofing." They contend that such structural damage required them to "completely demolish the existing structure and rebuild the entire two-story porch," evidence of which repairs they attached to their summary-judgment response in the form of invoices from their repair contractor. They contend that appellees did not present conclusive summary-judgment proof that the Maroneys either knew or should have known of the structural damage and water-penetration defects based on the 2011 report and the photographs of the cracked mortar. Based on the record, we agree with the Maroneys.

The 2011 report did not indicate any structural problems with the two-story porch, and we cannot conclude from this record, as a matter of law, that the Maroneys' injury in the form of the allegedly structurally defective lakeside porch is a type of injury that a reasonable investigation into the "mortar cracks" would have revealed. *See Trousdale*, 261 S.W.3d at 234 (noting that limitations period begins running when plaintiff has knowledge of such facts, conditions, or circumstances as would cause reasonably prudent person to make inquiry that would lead to discovery of cause of action or injury). It is not clear from this record what, exactly, *is* the claimed injury to the lakeside porch other than the Maroneys' generalized complaint in their pleadings and depositions of "structural damage" and "inadequate waterproofing," and we will not speculate, therefore, as to whether the claimed injury is a type that is "inherently undiscoverable" (such that the discovery rule would apply). *See Computer Assocs.*, 918 S.W.2d at 455 (defining "inherently

8

undiscoverable" injury). We conclude that appellees did not meet their burden of proof on their affirmative defense of limitations with respect to the Maroneys' allegations about structural defects to the lakeside porch and, accordingly, we hold that summary judgment with respect to this injury on the basis of limitations was error.

### *Claims related to lakeside columns*

In their summary-judgment motion, appellees also asserted that the Maroneys' claims alleging that they had defectively installed certain columns on the lakeside of the home were time-barred because the Maroneys learned of the defect, or of enough facts to put them on notice of their injury, from the 2011 report, more than four years before filing suit. We agree.

In his deposition, James Maroney explained each of the defects for which he and Maureen were suing appellees. With respect to the columns, he testified: "[T]here were two columns on the lakeside of the house. Outside the living room window it was noted in one of these reports about the base underneath them being—it was just a compilation of two-by-fours that that [sic] was going to rot, which it did and we had that replaced." The 2011 report contained a color photograph of the complained-of columns, which James Maroney identified in his deposition as the defective columns at issue, and described the columns ("posts") thus:

> The two large wooden posts on the east side at the gabled roof for the great room are sitting on unpainted, untreated wooden blocks that are cracked and deteriorated. Wood in contact with concrete will be subject to continuing deterioration.

In light of this 2011 report, as well as James Maroney's deposition identifying the column damage for which he was suing and his acknowledgment of receiving and reviewing the report before

9

purchasing the home, we hold that the discovery-rule does not apply to toll accrual of the Maroneys' claims with respect to the column damage. The evidence conclusively shows that the Maroneys were on notice of the "defective" construction of the columns—the wood bases in contact with concrete—more than two and four years prior to filing suit and, thus, negates application of the discovery rule. *See Trousdale*, 261 S.W.3d at 234. Moreover, the claimed defective column construction (i.e., the wood column in direct contact with concrete) is not the type of injury that is difficult for a home purchaser to discover (i.e., inherently undiscoverable), as the defect is visible with the naked eye, and any future worsening of the condition could be anticipated through the exercise of reasonable diligence. *See Computer Assocs.*, 918 S.W.2d at 455. Accordingly, we hold that the trial court properly granted summary judgment on all of the Maroneys' claims related to damage to the lakeside columns.

### *Claims related to improper sealing of the "house envelope"*

In their motion for summary judgment, appellees also asserted that the Maroneys' claim alleging that they had defectively sealed the "house envelope" was time-barred because the Maroneys learned of the defect, or of enough facts to put them on notice of their injury, shortly after purchasing the home and more than four years prior to filing suit. We agree.

In his deposition, James Maroney explained his and Maureen's claim with respect to the house envelope: "The house envelope was deficient in that there were openings all around, especially where the wood trim met the masonry where insects and pests could get in." He further testified that "from the beginning" he and Maureen had noticed that an inordinate amount of centipedes, millipedes, and other bugs were getting into the home and that, eventually, he had the

10

house envelope sealed by hiring contractors to caulk the alleged gaps, for which repairs they made claims in this lawsuit. This evidence establishes that, while they may not have known what was causing the "bug infestation" until much later or the full extent of the alleged defect, the Maroneys were on notice of their injury more than four years prior to filing suit. *See Gonzales*, 400 S.W.3d at 58. Furthermore, gaps at the intersections of a home's exterior components where caulking or sealant is not present is a type of defect that is not, categorically, difficult for a home purchaser to discover if exercising reasonable diligence. *See Computer Assocs.*, 918 S.W.2d at 455. Accordingly, we hold that the trial court properly granted appellees summary judgment on all of the Maroneys' claims related to improper sealing of the house envelope.

### Claims related to grading and landscaping

Specific to the Maroneys' alleged injury related to defective grading and landscaping, appellees moved for summary judgment on the ground that they had no duty to perform the landscaping and grading work in a non-negligent or good and workmanlike manner because, simply, they did not perform the work, and the Maroneys had presented no evidence to show that they did. Our review of the record supports the trial court's summary judgment on this ground.

When asked in his deposition whether Buerger Homes had been responsible for the grading and landscaping work around the home, James Maroney replied that he did not know. There was no other evidence supporting the Maroneys' contention that appellees had performed grading and landscaping work, and uncontroverted evidence submitted in the form of the affidavit of Newton W. Buerger indicates that appellees did not perform the landscaping and grading work on the home. In the absence of any evidence controverting this and creating a fact issue on whether

11

appellees performed the work at issue, we hold that the trial court properly granted summary judgment with respect to all of the Maroneys' claims related to the alleged landscaping and grading defects.

### Negligence claims

With respect to their negligence claims, the Maroneys contend that the trial court erred by granting appellees' summary-judgment motion on the ground that the claims were barred by the "economic loss rule." Specifically, appellees had asserted in their motion that because the only damage alleged by the Maroneys was to the subject of a contract (i.e., the home) rather than to other property or to persons, the action lies only in contract, not tort. *See Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone.").

As the supreme court has recently noted, the "economic loss rule" is somewhat of a misnomer, as the doctrine consists of several limited rules that govern recovery of economic losses under certain circumstances. *See Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011). Nonetheless, Texas courts have applied the doctrine to circumstances analogous to those present here, precluding negligence claims where the only loss alleged is to the subject matter of a contract, even when the parties are not in contractual privity. *See A&H Props. P'ship v. GPM Eng'g*, No. 03-13-00850-CV, 2015 WL 9435974, at *1–2 (Tex. App.—Austin Dec. 23, 2015, no pet.) (mem. op.) (holding that economic-loss rule precluded warehouse owner's negligence claim against designer of geothermal loop where owner had no contract with designer, who was hired by construction company with whom owner contracted for installation and construction of energy-efficient improvements); *Schambacher v. R.E.I. Elec., Inc.*, No. 2-09-345-CV, 2010 WL 3075703,

12

at *7 (Tex. App.—Fort Worth Aug. 5, 2010, no pet.) (mem. op.) (holding that homeowner's negligence claims against subcontractors were barred by economic-loss rule, where homeowner had no contractual privity with subcontractors, and only injury alleged was to construction services that were subjects of contracts between subcontractors and general contractor); *Pugh v. General Terrazzo Supplies, Inc.*, 243 S.W.3d 84, 93–94 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (holding that homeowners' negligence claims against subcontractor and materials supplier, with whom they had no contractual privity, were barred by economic-loss rule where only injury was to home itself, which was subject of construction contract between homeowner and general contractor); *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 695 (Tex. App.—Eastland 2002, no pet.) (holding that negligence claim of subsequent purchaser of airplane against company performing repairs for airplane's previous owner was precluded by economic-loss rule where only injury claimed was faulty repairs themselves); *see also Hininger v. Case Corp.*, 23 F.3d 124, 125, 127 (5th Cir. 1994) (applying Texas law and holding that economic-loss rule barred negligence claim of purchaser of combine against manufacturer of replacement wheels, with whom plaintiff had no privity of contract, where only injury was to wheels themselves); *Coffey v. Fort Wayne Pools, Inc.*, 24 F. Supp. 2d 671, 687 (N. D. Tex. 1998) ("It is well-settled Texas law that a plaintiff cannot maintain a tort action against a defendant when his damages are only for economic losses caused by the failure to perform a contract."). The application of the economic-loss rule is a question of law that we review de novo. *See Bank of Am., N.A. v. Barth*, No. 13-08-00612-CV, 2013 WL 5676024, at *10 (Tex. App.—Corpus Christi Oct. 17, 2013, no pet.) (mem. op.).

While the Maroneys cite the *Gupta* case in support of their negligence claim, *see Gupta v. Ritter Homes, Inc.*, 633 S.W.2d 626, 628 (Tex. App.—Houston [14th Dist.] 1982), *affirmed*

13

*in relevant part, reversed in part on other grounds by* 646 S.W.2d 168, 168 (Tex. 1983), we conclude that the case is not controlling for two reasons: (1) the economic-loss rule was not argued by defendants or at issue in that case, as it is here; and (2) the more recent *Jim Walter Homes* case and its progeny, referenced supra, have applied the "economic loss rule" to injuries such as those here to preclude negligence claims. *See LAN/STV v. Martin K. Eby Constr. Co.*, 435 S.W.3d 234, 242 n.35 (Tex. 2014) ("We have repeatedly reaffirmed this [economic-loss] rule [identified in *Jim Walter Homes*].."); *Medical City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61–62 (Tex. 2008) (where plaintiff building owner contracted with roofing company to re-roof its building, its negligence claim against roofing-materials supplier was barred by economic-loss rule where only injury was to defective roof itself, which was "the subject of a contract" between owner and roofing company). Accordingly, we hold that summary judgment in favor of appellees on the ground of the "economic loss rule" was proper, and we overrule the Maroneys' issues pertaining to dismissal of their negligence claims.

### *Express-warranty claims*

Appellees argued in their summary-judgment motion that they were entitled to judgment on the Maroneys' express-warranty claims because (1) the Maroneys could produce no evidence of the purported element of a warranty claim requiring the defendant to "have sold services to the plaintiff," *see Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 887 & n.8 (Tex. App.—Dallas 2007, no pet.) (noting that caselaw and statutes supported appellee's assertion of six elements of claims for breach of warranty for services provided); and (2) the Maroneys lacked capacity to bring a claim due to lack of privity of contract and because they suffered

purely economic loss, *see Texas Processed Plastics, Inc. v. Gray Enters., Inc.*, 592 S.W.2d 412, 415 (Tex. Civ. App.—Tyler 1979, no writ).

On appeal, the Maroneys contend that they have a viable express (statutory) warranty claim under the now-expired Texas Residential Construction Commission Act (TRCCA), which was in effect from 2003 to 2009,[2] and that their statutory-warranty claim is not barred by their lack of privity with appellees because the warranties conferred by the act run with the home to the benefit of subsequent homeowners. *See* Act of May 27, 2003, 78th Leg., R.S., ch. 458, §1.01, Tex. Gen. Laws 1703, 1703–22 (expired Sept. 1, 2009) (Former Tex. Prop. Code §§ 401.001–446.006). They contend that their statutory-warranty claim under the TRCCA is viable because the home was built while the act was in effect.[3]

The TRCCA imposed statutory minimum warranties and performance standards for the construction of homes and replaced common-law implied warranties of good workmanship and habitability. *See* Former Tex. Prop. Code §§ 430.002 ("The construction of each new home or home

---

[2] The TRCCA also established the Texas Residential Construction Commission (TRCC) to oversee the registration of homes, homebuilders, and remodelers; to administer a state-sponsored inspection and dispute-resolution process to address alleged construction defects; and to delineate the limited statutory warranties and building and performance standards established in the act. *Smith v. Overby*, No. 04-15-00436-CV, 2016 WL 4444437, at *1 (Tex. App—San Antonio Aug. 24, 2016, no pet.) (mem. op.). The TRCC did not survive sunset review in 2009 and stopped accepting new claims against builders for alleged defective construction in September 2009 and stopped processing existing claims in September 2010, when it ceased operations. *See id.* at *1 n.1.

[3] The Contract between Buerger Homes and the original homeowners identified the only warranties given by the builder as those provided by "the applicable limited statutory warranty promulgated by the [TRCC], a copy of which can be found at [currently inactive internet hyperlink]." *See also* Act of May 27, 2003, 78th Leg., R.S., ch. 458, §1.01, Tex. Gen. Laws 1703, 1703–22 (expired Sept. 1, 2009) (Former Tex. Prop. Code § 430.001(b)(3)) (providing for 10-year warranty for structural work).

improvement shall include the warranty of habitability."), .006 ("The warranties established under this chapter supersede all implied warranties. The only warranties that exist for residential construction or residential improvements are warranties created by this chapter or by other statutes expressly referring to residential construction or residential improvements, or any express, written warranty acknowledged by the homeowner and the builder."). The TRCCA warranties could not be waived, *id.* § 430.007, and the act governed every residential home constructed after June 1, 2005 through August 31, 2009. *See id.* § 401.006.

However, the TRCCA expired under its sunset provision on September 1, 2009. *See id.* § 401.006. When a cause of action is based on a statute—as the Maroneys contend that their express-warranty claims are—a repeal of that statute without a saving clause for pending suits or for causes of action not yet accrued under the statute abolishes any rights of action based upon the statute, and parties claiming a cause under the statute are "left without any remedy at law to enforce their claims." *American Honda Motor Co. v. Texas Dep't of Transp.-Motor Vehicle Div.*, 47 S.W.3d 614, 621 (Tex. App.—Austin 2001, pet. denied); *see Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382, 384 (Tex. 1982). "The general rule is that when such law is repealed without a saving clause, it is considered, except as to transactions past and closed, as though it had never existed." *American Honda Motor Co.*, 47 S.W.3d at 621 (quoting *National Carloading Corp. v. Phoenix-El Paso Express*, 176 S.W.2d 564, 570 (Tex. 1943)). Although the TRCCA was not expressly repealed but, rather, expired on its own terms in accordance with its sunset provision, we conclude—for the purposes here—that repeal versus expiration is a distinction without a difference. *See Jones v. Foundation Surgery Affiliates of Brazoria Cty.*, 403 S.W.3d 306, 310 (Tex.

16

App.—Houston [14th Dist.] 2012, pet. denied) (holding that current law as set out in business organizations code applied to dispute rather than expired partnership act that was in force at time plaintiffs' cause of action concerning partnership arose). Because the TRCCA expired before the Maroneys obtained any relief thereunder, it is as if the act "never existed," and they are without a remedy to enforce their claims thereunder. *See American Honda Motor Co.*, 47 S.W.3d at 621. Accordingly, we overrule the Maroneys' issues in which they contend that the trial court improperly granted summary judgment on their express-warranty claims.

### *Implied-warranty claims*

Appellees moved for summary judgment on the Maroneys' implied-warranty claims on the ground that they were superseded by the TRCCA.[4] *See* Former Tex. Prop. Code § 430.006 ("The warranties established under this chapter supersede all implied warranties. The only warranties that exist for residential construction or residential improvements are . . . warranties created by this chapter."). However, as discussed supra, because the TRCCA expired, it is as if it "never existed." Thus, it has no effect on the Maroneys' implied-warranty claims.

The supreme court has held that a subsequent purchaser of a home may maintain a cause of action for breach of the implied warranties of habitability and good workmanship, which

---

[4] They also moved for summary judgment on the ground that Newton W. Buerger cannot be held personally liable on the Maroneys' warranty claims because the previous owners of the home contracted solely with Buerger Homes (the corporation), not Buerger himself (who was not a party to the Contract). The Maroneys do not raise the issue of Buerger's personal liability in their appellate briefs or otherwise challenge the propriety of the trial court's ruling with respect to his liability and, accordingly, we affirm the portion of the trial court's summary judgment dismissing their warranty claims against him.

17

are implied by every contract for the construction of a home. *See Gupta*, 646 S.W.2d at 169 ("We hold that [the implied warranty of habitability and good workmanship] does cover latent defects not discoverable by a reasonably prudent inspection of the building at the time of [a subsequent] sale. . . . As between the builder and owner, it matters not whether there has been an intervening owner."). Accordingly, we sustain the Maroneys' issues contending that the trial court's summary-judgment on their implied-warranty claims against Buerger Homes was improper, reverse that portion of its judgment, and remand this issue for further proceedings.

***Attorney's fees***

The trial court's final judgment awarded Buerger Homes and Buerger $54,000 (without segregating the amount between the two defendants) on their counterclaim for attorney's fees under the Contract's "prevailing party" clause. On appeal, the Maroneys contend that they cannot be bound by the prevailing-party clause because they are not signatories to the Contract. *See, e.g.*, *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 706 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ("It goes without saying that a contract cannot bind a nonparty.") (quoting *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002)).

We agree that the attorney's-fees award must be reversed, not only because the Maroneys are not signatories,[5] but also because the Contract has no applicability to the Maroneys'

---

[5]  We find that the cases relied upon by appellees for the proposition that attorney's-fees clauses similar to the one here entitle "any prevailing party to the litigation to costs and fees, regardless of whether the litigants were signatories to the contract," are distinguishable because in those opinions (1) the lawsuit at issue was "related to" the Contract and (2) the party *receiving* the attorney's-fees award was the non-signatory, rather than the reverse—attorney's fees assessed *against* a non-signatory, as we have here. *See Lawson v. Keene*, No. 03-13-00498-CV, 2016 WL 767772, at *3–4 (Tex. App.—Austin Feb. 23, 2016, pet. denied) (mem. op.); *Sierra Assoc. Grp., Inc.*

claims, which were not—as the Contract's attorney's-fees provision specifies—"brought under or with relation to" the Contract.[6] The Maroneys' pleadings asserted that their warranty claims arose under the TRCCA and due to alleged warranties that "run with the land." Accordingly, we conclude that the trial court erred in awarding appellees attorney's fees.

## CONCLUSION

The trial court properly granted summary judgment on (1) the Maroneys' negligence and express-warranty claims against both appellees, (2) the Maroneys' implied-warranty claims against Buerger personally, and (3) all of the Maroneys' claims against both appellees for damages to the home's lakeside columns, "envelope sealing," and landscaping and grading. We affirm the judgment in these respects.

However, the trial court erred in granting appellees attorney's fees, and we reverse that portion of its judgment and render judgment that neither appellee is entitled to attorney's fees. The trial court also erred in granting Buerger Homes summary judgment on the Maroneys' implied-warranty claims against it and on its affirmative defense of limitations with respect to the Maroneys'

---

*v. Hardeman*, No. 03-08-00324-CV, 2009 WL 416465, at *6–8 (Tex. App.—Austin Feb. 20, 2009, no pet.) (mem. op.).

[6] For the first time on appeal, appellees assert that the non-signatory Maroneys are nonetheless bound by the Contract's attorney's-fees provision under the theory of equitable estoppel. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding). However, we may not affirm the award of attorney's fees on this ground, as it was not expressly set out in appellees' summary-judgment motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993). Even had appellees raised equitable estoppel as a ground below, we would conclude that it is inapplicable here, as the Maroneys' pleadings do not reflect that they are "seeking the benefits" of the Contract by, for instance, attempting to enforce other provisions of the Contract against appellees. *See In re Kellogg Brown & Root*, 166 S.W.3d at 739.

claim of damages to the two-story lakeside porch. Accordingly, we reverse the trial court's summary judgment dismissing the Maroneys' implied-warranty claims against Buerger Homes with respect to their claimed damage to the lakeside porch and remand that cause for further proceedings in accordance with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Field, and Bourland

Affirmed in Part; Reversed and Remanded in Part; Reversed and Rendered in Part on Motion for Rehearing

Filed: June 20, 2018